Gaston, J.
 

 The plaintiff files this bill as the assignee of John Aikin against the said John and the widow and children of Samuel Aikin, Senior, deceased, seeking the specific execution of a contract made between the said Samuel and the said Jphn. The contract is in writing, bears date the 14th August, 1813, is sealed by the parties, and has the form of a bond, whereby the said Samuel, for various good considerations, him thereunto moving, obliges himself to bon-vey to the said John all the lands, goods and chattels, whereof the said Samuel is possessed; and a condition is subjoined whereby the said John promises, in compensation for the above, that the said Samuel shall be permitted to enjoy undisturbed, the possession of the premises during his life, and that at his decease the said John shall
 
 “
 
 take charge of the said Samuel’s family, the four of the first wife’s children to be supported in the necessaries of life, and the other part of the family, the said John is bound that, after the death of the said Samuel, his widow shall be put into possession of 100 acres of land, including the place where the said John lives, to be occupied and possessed during widowhood, and, on her marriage, to be put into the use of her two children, Elizabeth and Samuel, and when they come of age the said John shall make a free deed of said hundred acres to them.” And the instrument declares “ that in the testimony of the above witnessing the intent and meaning of the parties, they have thereunto subscribed their hands and seals, and lodged thesame in the hands of their friend Wm. Cuy,” and the instrument is attested by the said William. The bill alleges that the four children alluded to in the said instrument were John, James, Peter and Jane, all of whom were idiots, and that John Ai-kin, one of the parties to said instrument, was at the date thereof married to Ann, a daughter of the said Samuel, and a full blooded sister of the said idiots; that one of their idiot
 
 *188
 
 children, Jane, died within a few years after the agreement; that in 1820 or 1821, John Aiken removed from this State to Alabama, and carried with him the three then surviving ldt-ot children; that one of them, Peter, has since died; that the other two are yet alive, and that the said John Aikin comin-nally maintained and supported the three children so removed by him., while Peter lived, and hath, since Peter’s death, supported and continues to support the other two, free from any charge upon the said Samuel while he lived, or upon his estate since his death,
 

 The bill also states that, at the time of the said agreement, Samuel Aikin, the elder, was seized and possessed of three tracts of land in the county of Burke adjoining each other, the boundaries'of which it particularly describes, and of a small personal estate; that he remained in the possession and enjoyment thereof until-the year 1833 or 1834, when he died intestate; that he left surviving him bis daughter Ann, the wife of John Aikin, the children of Mary Montgomery, a full blooded sister of the said Ann, the two idiot sons herein last named (these being the issue of his former wife) and a widow Dicey, who was the wife of the said Samuel at the date of the aforesaid agreement, the two children of the said Samuel and Dicey therein mentioned, and five others who were born to the said Samuel and Dicey after the said agreement; that no administration has ever been sued out on his estate, but that the said Dicey and her children have held possession of the said tracts of land and of all the personal property of the intestate from the time of his death. The plaintiff further avers, that, on the 14th of June, 1838, John Aikin, for a valuable consideration, assigned to him all his interest in the estate that was of Samuel Aikin; that he, the plaintiff, has the title to, and is seized
 
 of, the tract
 
 of 100 acres-referred to in the agreement; that he hath tendered to the defendants, Dicey, Elizabeth and Samuel Aikin; deeds of conveyance for the same, agreeably to the stipulations of John Aikin in the agreement with Samuel, and required a conveyance from the heirs at law of the said Samuel, of the lands, whereof the said Samuel was seized at the date cf the agreement, and that this requisition has been refused; and
 
 *189
 
 offering to secure, in any manner that may be deemed effec •tual, the-performance of the covenant of his assignor for the , . ..... . . support of the two surviving idiots, and further to convey the said 100 acre tract to the said widow and her two children, Elizabeth and Samuel, agreeably to the other part of the covenant of his assignor, prays that the defendants may be decreed to convey to him the three tractsof land, whereof Samuel Aikin was seized as aforesaid, and to account for the profits thereof since his death. To this bill the widow Dicey Aikin and three of her children havé put in answers, in which they allege that the pretended agreement was indeed executed at the time it bears date, but that the same was not intended by the parties to be a binding agreement .or to be carried into execution, but was colourable and made to the intent merely to throw embarrassments in the way of pertain creditors and others, who were then prosecuting-suits against the said Samuel; that John Aikin, as whose assignee ihe plaintiff claims, in 1820 or 1821, before his removal
 
 tó
 
 Alabama, sold and conveyed away absolutely to the plaintiff the 100 acres of land mentioned in said agreement, and thereby disabled himself from performing the pretended covenant contained in said agreement on his part, for the assuring thereof to the widow and her two children at the death of Samuel Aikin; that although he carried with him, when he removed to Alabama’ the three idiot children, he . hath never afforded to them or either of them any support, but has thrown them on the parish in Alabama to be supported; that the said John hath never in any way acted under the said agreement or claimed that the same was a valid or subsisting one, and, admitting that the plaintiff hath obtained an assignment from the said John of all his interest in the estate of the said Samuel for some trifling consideration, they deny that the court will, at the instance of the plaintiff, set up and cause to be specifically executed the said pretended agreement.
 

 The infant heirs within the State put in the ordinary answer, disclaiming all knowledge of the matters in contestation. John Aikin, the assignor, who was a resident of Alabama, put in no answer, and as to him and the other non
 
 *190
 
 resident defendants, the bill has been taken pro
 
 confesso.
 

 We are of opinion that, if either John Aikin or the plain- . , . . . , ,. , tiff, rns assignee, have rights under the alleged agreement, 0USht t0 ^ ava^ lega-l remedy thereon, and that the case made is not one which furnishes a sufficient ground for the interference of a Court of Equity. Waiving the consideration of other matters, it seems to us that if the agreement was one
 
 bona fide
 
 intended by the parties to be executed, and the specific execution of which could have been demanded by either of them, the same has been long since abandoned on the part of the said John. It is admitted that he removod altogether from this State in the year 1820 or 1821, and that upon such removal he sold and conveyed away absolutely the tract of land, whereon he was then settled, and which tract was to be in part, at least, the equivalent for the entire estate of his father-in-law, agreed to be con veyed to him.
 

 Now it cannot be doubted, that, if the agreement were then regarded as valid and still subsisting, John Aikin deliberately chose to forego the benefit thereof, preferring to convert the land, which, under the agreement, was to be reserved for his father-in-law’s widow and the two elder children of that marriage, into money for the purpose of a profitable investment and comfortable settlement, in a new and growing country. Nor is this unequivocal act of repudiation or abandonment of the agreement on
 
 his
 
 part met by proof of any one thing done by him in affirmance of that agreement. It is true, that, at the urgent solicitation of his wife, he carried with him her three idiot brothers, when he thus left the State; but this could not be done in execution of the agreement, for that contained no stipulation for their support until after their father’s death; and two witnesses testify that this solicitation of Mrs. Aikin was backed by a promise of her father to pay him well for their support. There is no evidence of support having been given to these unfortunate beings after their removal to Alabama, or after the death of their father, in 1833 or 1834. Nor is there evidence of any claim having been asserted, under the agreement, by John Aikin.
 

 
 *191
 
 It is true, that in 1838 he made an assignment to the plaintiff, which was valid in law to pass his interest in the' lands in quéstion, and the plaintiff has it in his power, in consequence of having become the proprietor of the tract so sold by John Aikin, to execute that part of John’s agreement. But the claim of the plaintiff is wholly unsupported by any peculiar equity on his part, and he can ask no' more than
 
 to be
 
 substituted to the rights, such as they are, of his assignor. Now, nothing less than good faith and reasonable diligence will entitle a party to the peculiar relief accorded by a Court of Equity, in enforcing the specific execution of a contract, even when it is unquestionably fair, and in every way reasonable. If this contract be one of that description, on which we forbear from declaring an opinion, it is obvious, we think, that if the said John should attempt to set it lip, and pray for its enforcement, because of an accident having put it into his power now to comply with it, the court, after such bad faith and neglect on his part, would not be roused into action at his instance.
 

 Per Curiam, Bill dismissed with costs.